SMITH v. DUGAN et al.

(Supreme Court, Appellate Division, First Department.  July 7, 1911.)

1. WILLS (§ 545*)—CONSTRUCTION—SURVIVORSHIP.
   A will, after devising certain land in fee, provided that, in case the devisee died without leaving lawful issue, the land devised should be sold and the proceeds distributed among certain others.  Held, that this condition had reference only to the death of the devisee before testator, and, having survived the testator, the devisee's estate became absolute.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1171–1176; Dec. Dig. § 545.*]

2. WILLS (§ 601*)—CONSTRUCTION—ESTATES DEVISED.
   A devise in fee cannot be cut down by a subsequent provision, unless words are used which clearly and unmistakably show that such was the intent of testator.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1340–1350; Dec. Dig. § 601.*]

3. WILLS (§ 478*)—CONSTRUCTION—DEVISES BY IMPLICATION.
   Where a will recited that testator had received the property under the will of his father, which provided that in case of his death without issue the property was to pass to other beneficiaries named in the will, but contained no words of gift or devise, and the will of the father had given the testator an estate in fee, a devise by implication does not arise in favor of those named in the will of the father.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 999; Dec. Dig. § 478.*]

4. WILLS (§ 587*)—CONSTRUCTION—PRESUMPTION.
   It is presumed that a testator intends property, otherwise undisposed of, to be included in the residuary clause of his will.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1281–1291; Dec. Dig. § 587.*]

5. WILLS (§ 587*)—CONSTRUCTION—RESIDUARY CLAUSE—PROPERTY DISPOSED OF.
   Where a testator did not know that he held certain property devised to him by his father in fee and made no attempt to dispose of it by his will, such property fell into the residuum of his estate and passed by the residuary clause, for a general residuary devise carries every real interest, whether known or unknown, to the testator.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1281; Dec. Dig. § 587.*]

Ingraham, P. J., dissenting in part.

Appeal from Special Term, New York County.

Action by Louis D. Smith against William F. Dugan, in which the Farmers' Loan & Trust Company, Gilbert F. Smith, and others were impleaded.  From a judgment for plaintiff, certain of the defendants appeal.  Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

James F. Horan, for appellant Farmers' Loan & Trust Co.
Richard O'Gorman, Jr., for appellants Mary J. Smith and others.
Edward J. McGuire, for appellants Gilbert F. Smith and others.
Alex. L. Strouse, for respondent Louis D. Smith.
Lucius H. Beers, for respondents William F. Dugan and others.

McLAUGHLIN, J.   This action, while originally brought to enjoin the defendant Farmers' Loan & Trust Company from selling certain real estate in the city of New York, was, when the same came on for trial, by stipulation, tried as one brought for the construction of the wills of Hugh and Andrew J. Smith.

[1] Hugh Smith died in 1837, leaving a will which was probated the same year. He devised to each of his children one or more specific pieces of real estate, and to some of them he gave money legacies. The will provided in part as follows:

"I give, devise and bequeath to my son Andrew Smith my house and lot known and distinguished as number (254) two hundred and fifty-four East Broadway, in the city of New York, together with my house and lot known and distinguished as number two hundred and seventy-one Division street (271) in said city, and also all the ready money of which I may be possessed at the time of my decease to have and to hold the same unto my said son Andrew to his heirs, executors, administrators and assigns forever.   *   *   *

"Thirdly, it is my will, and I do hereby order and direct that in case of the death of any of my children herein named, without leaving lawful issue, the property bequeathed to such child shall be sold and the amount sales, after deducting the necessary expenses, be equally divided amongst my surviving children, share and share alike.   *   *   *

"Sixthly, in case any of my children shall die without leaving lawful issue, it is my will, and I do order and direct that the property hereby bequeathed to such child be sold and equally divided amongst my surviving children or their heirs, share and share alike."

The son Andrew took possession of the real estate devised to him by his father and retained possession of it until 1908, when he died, unmarried, and without issue. He left a will, which was admitted to probate, and under its eighth clause the defendant Farmers' Loan & Trust Company, which qualified as sole executor, was authorized and directed to sell the whole of his real estate and divide the net proceeds among those entitled thereto. So much of his will as affects the question reads as follows:

"Fifth. Under the provisions and conditions contained in the will of my father, Hugh Smith, deceased, and in pursuance thereof the two houses and lots devised to me in and by said will and known respectively as number two hundred and fifty-two East Broadway in the city of New York, and number two hundred and forty-one (formerly 271) Division street, in the said city, are directed to be sold, in case of my death, without leaving lawful issue and the proceeds to be equally divided among the surviving children of the said testator or their heirs in manner therein directed.   *   *   *

"Seventh. I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of what nature and kind soever, and wheresoever situated, unto" certain persons, naming them, "equally, to be divided among them, share and share alike, to have and to hold unto them, their heirs and assigns forever.   *   *   *"

The question presented for determination is whether the trust company, under the power of sale given to it by the will of Andrew, can sell the real estate specifically referred to in that portion of the second clause of his father's will above quoted. The answer to the question necessarily depends upon whether Andrew took an absolute fee and such real estate passed under the residuary clause of the will.

I am of the opinion that the trust company can sell this real estate. The devise of it by the father to Andrew was a present vested gift of

the fee, which was not affected by the fact of Andrew's dying without leaving issue. The devise, in terms, is absolute. There is no life estate or point of time, other than the death of the testator himself, to which could be referred the words, "in case of the death of any of my children herein named without leaving lawful issue," contained in the third clause, and similar words contained in the sixth clause of his will. Under such circumstances, the rule is well settled that such words refer to the death of the testator, and for that reason any child who survived the testator took an absolute vested gift, not subject to be divested if that child should subsequently die without issue.

The case of Quackenboss v. Kingsland, 102 N. Y. 128, 6 N. E. 121, 55 Am. Rep. 771, is directly in point. There the gift of the residuary estate was to the testator's son, Daniel Kingsland, and to his heirs. The will then provided, "in case my son Daniel should die without lawful issue, I give the estate to my remaining children." The court, in disposing of the question, said:

"These words we must hold, upon principle and authority, relate to the death of the testator, and upon that event during the life of Daniel Kingsland, Jr., the latter became vested with the residuary estate and was entitled to its possession. * * * No doubt the whole will is to be looked at as containing the intent of the testator, and one part may be made to give way to some other controlling provision; * * * but here we find nothing to warrant a presumption against the legal meaning of the words used in the residuary clause."

Fowler v. Ingersoll, 127 N. Y. 472, 28 N. E. 471, is also an authority for the construction thus put upon the will of the father. There the court said:

"The rule is well settled by authority and precedent that when there is a devise or bequest simpliciter to one person and in case of his death, to another, the contingency referred to is a death in the lifetime of the testator. So, when there is a devise to A., and, in case of his death without issue or without children, then to B., the weight of authority is that the words refer to a death without issue in the lifetime of the testator, and that the primary devisee surviving the testator takes an absolute estate in fee simple. The words of contingency are substitutionary merely, and are intended to prevent a lapse in case the first devisee is not living at the death of the testator, and do not create an executory devise or a remainder over upon the death at any time of the first taker."

See, also, Matter of Russell, 168 N. Y. 169, 61 N. E. 166; Matter of Farmers' Loan & Trust Co., 189 N. Y. 202, 82 N. E. 181.

[2] It is a general rule in the construction of wills that an absolute gift of the fee cannot be cut down by subsequent provisions, unless words are used which clearly and unmistakably show that was the intent of the testator. Freeman v. Coit, 96 N. Y. 63; Byrnes v. Stillwell, 103 N. Y. 453, 9 N. E. 241, 57 Am. Rep. 760; Herzog v. Title Guaranty & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146. An examination of the whole will of Hugh Smith not only fails to disclose an intent to cut down the absolute gift to Andrew, but, as it seems to me, to affirmatively show the contrary. The gift included, besides the two parcels of real estate, "all the ready money of which I may be possessed at the time of my decease." The testator certainly did not intend that the title to the money should divest at the death of

Andrew. · He made no provision for its safe-keeping and in no way indicated that he was not to use the principal as well as the income.

[3] The absolute fee to the real estate was vested in Andrew at the time of his death, and he disposed of it only by the residuary clause of his will. The fifth clause of his will was simply a recital that he had received the property under the will of his father, which provided that in case of his death without issue the property was to pass to other beneficiaries named in that will. The clause contained no words of gift nor any indication that he intended to effect a devise thereby. If he thought that his father's will only gave him a conditional estate, and for that reason he could not dispose of it, he was mistaken. In that case he did not intend to dispose of it by the fifth clause. If he knew that he had the absolute title, then there is nothing in the fifth clause to indicate that he intended to give effect to his father's will by devising the property to the beneficiaries therein named. Had this been his intent, then some words of gift would have been used. Where no words of gift appear, there must be clear evidence that the gift was intended.

The rule as laid down in Bradhurst v. Field, 135 N. Y. 564, 32 N. E. 113, is:

"To uphold a legacy by implication, the inference from the will of the intention must be such as to leave no hesitation in the mind of the court, and to permit of no other reasonable inference."

[4] It is suggested that Andrew impliedly excluded ·the real estate in question from the residuary clause of his will, and therefore he died intestate as to it. A testator may, of course, intend to exclude from his residuary clause some of his otherwise undisposed of property; but the presumption is that he did not so intend. Matter of Miner, 146 N. Y. 121, 40 N. E. 788; Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133.

[5] It is also suggested that, by reciting the provisions of his father's will, Andrew indicated that he believed he had no interest in the real estate therein referred to, and for that reason it was his intention not to include such real estate in the residuary clause. This is not so, because the general rule is:

"A general residuary devise carries every real interest, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed, and an intention to exclude must appear from other parts of the will, or the residuary devisee will take." Floyd v. Carow, 88 N. Y. 561.

If he did not know that he owned this real estate, then he certainly did not intend to dispose of it, and in that event it passed by the residuary clause.

My conclusion is that Andrew J. Smith, at the time of his death, was the absolute owner in fee simple of the real estate in question; that the same passed under the residuary clause of his will; and that the trust company, under the authority given in the will, has the power of sale.

It follows that the judgment appealed from is reversed, and, as the facts are undisputed, judgment is directed to be entered as indicated

in this opinion, with costs to each of the appellants separately appearing, payable out of the estate.

CLARKE, SCOTT and DOWLING, JJ., concur.

INGRAHAM, P. J.   I agree with Mr. Justice McLAUGHLIN that Andrew J. Smith took the absolute fee of the property in question under the will of his father, Hugh Smith, and that therefore the defendant trust company had a power of sale and was authorized to sell the property.   I think, however, that, under the fifth clause of Andrew J. Smith's will, he intended that the proceeds of these two pieces of property when sold were to be divided among those mentioned in the third clause of the will of Hugh Smith, namely, the heirs at law of Andrew J. Smith's surviving brothers and sisters.

To this extent I do not concur with Mr. Justice McLAUGHLIN.