OPINION OF THE COURT
Eve Preminger, S.
This application by the executor of the estate of Martin Trigoboff seeks a determination of the beneficiary of decedent’s individual retirement account (IRA). At issue is whether a *371 testamentary disposition of an IRA in a will predating decedent’s marriage supersedes the IRA’s generic default designation in favor of the surviving spouse. For the reasons described below, the court holds that, absent evidence of a contrary intent of the testator, a specific testamentary disposition overrides a default designation.
Martin Trigoboff died on January 6, 1997, survived by his spouse, Jacqueline, and two children from a prior marriage, Craig Trigoboff and Sherri Paige Arkerson. Mr. Trigoboffs estate is estimated at $180,000, excluding the value of his individual retirement account (IRA) which is approximately $400,000.
The IRA application, a simple one-page form, provides that “[i]f no designation of beneficiary is set forth [on this form], the beneficiary shall be deemed to be his/her spouse, if surviving, or, if not, his/her estate.” This provision is also included in the IRA custodial account.[1] There is no beneficiary designated on the IRA application form.
At the time decedent established the IRA, in December 1988, he was married to his second wife, Linda. After he divorced Linda, he executed a will, dated March 31, 1995, in which he specifically bequeathed “monies held in any and all accounts * * * including, but not limited to [several enumerated accounts, including the IRA],”[2] in equal shares, to Jacqueline, Sherri and Craig. Subsequently, decedent married Jacqueline *372 and died without changing his will or altering his IRA beneficiary designation.
Smith Barney, the IRA custodian, first received a demand for distribution from the executor and thereafter received a demand from Jacqueline. Smith Barney then declined to make distribution. This application followed. A temporary restraining order precluding distribution pending the outcome of the litigation is in force.
In general, the designation of a beneficiary to receive a payment upon the death of the person making the designation must be made in a writing signed by the designator (EPTL 13-3.2 [d]). Although EPTL 13-3.2 does not expressly refer to IRAs, it has been held to apply to them (Matter of Morse, 150 Misc 2d 415).
IRAs, like pension plans and insurance policies, typically set forth a procedure for designating a beneficiary (Matter of Morse, supra). The payor is entitled to require strict compliance with such procedural rules, and if it does so, the designated beneficiary receives the asset irrespective of whether the beneficiary designation reflects decedent’s actual intent (Matter of Jaccoma, 142 AD2d 875; Matter of Dorb, 58 Misc 2d 734; Matter of Ziolkowski, 47 Misc 2d 752; Matter of Stephan, 199 Misc 118). Conversely, the payor may waive compliance with procedural rules and seek or await a judicial determination of the proper payee (McCarthy v Aetna Life Ins. Co., 231 AD2d 211; Kane v Union Mut. Life Ins. Co., 84 AD2d 148; Matter of Morse, supra). Conditioning the designated beneficiary’s absolute right to payment upon the decision of the stakeholder to waive or require compliance with procedural rules reflects the purpose of such rules which is simply to protect the payor (Matter of Morse, supra; see generally, Annotation, Effectiveness of Change of Named Beneficiary of Life or Accident Insurance Policy by Will, 25 ALR4th 1164).
If the payor waives compliance with the procedural rules, the court must “ ‘exercise equity and seek to do what the insured apparently intended and award the fund to the claimant having the strongest claim under existing conditions’ ” (Kane v Union Mut. Life Ins. Co., supra, at 154). Establishing intent different from that expressed in the beneficiary designation provided in accordance with the contract requires proof of steps “beyond a statement, uttered during the decedent’s *373 lifetime, of mere intent” (McCarthy v Aetna Life Ins. Co., supra, at 216). In addition to intent, there must be proof of an “act or acts designed for the purpose of making the change” (Aetna Life Ins. Co. v Sterling, 15 AD2d 334, 335, affd 11 NY2d 959).
For example, a will that specifically disposes of an unambiguously identified IRA or insurance policy may effectively override a beneficiary designation executed prior to the will (compare, Matter of Morse, supra, with Kane v Union Mut. Life Ins. Co., supra). In the absence of any other evidence, the will stands as the uncontradicted evidence of clear intent to change the designation and the will execution is an affirmative act toward effectuating that intent (see, McCarthy v Aetna Life Ins. Co., supra; Matter of Morse, supra).
At the call of the calendar in this case, the IRA custodian, Smith Barney, informed the court that it was taking no position with respect to the dispute. By doing so, Smith Barney waives its right to enforce procedural requirements. This waiver, although not in the form of a deposit into court or an interpleader action, enables the court to disregard procedural formalities and determine the proper payee based upon an evaluation of the evidence of decedent’s manifest intent (see, McCarthy v Aetna Life Ins. Co., supra; see also, Turano, 1991 Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 13-3.2, at 143).[3]
In this case, the question of intent arises because decedent executed his will after the IRA application but at a time when the presumptive default designation to his surviving spouse was inoperative (after his marriage to Linda and before his marriage to Jacqueline). As noted above, if Jacqueline had been affirmatively designated by name on the beneficiary designation form, decedent’s subsequently executed will specifically disposing of the IRA otherwise would evidence an intent to change the designation and, in the absence of other evidence, would be sufficient to displace Jacqueline as beneficiary (see, McCarthy v Aetna Life Ins. Co., supra; Matter of Morse, supra). Similarly, if decedent had been married to Jacqueline at the time the will was executed, the will would clearly evidence decedent’s intent to displace Jacqueline as designated beneficiary. A discernable question of intent arises here only because of the possibility that decedent did not intend to *374 disturb the presumptive default designation in favor of a surviving spouse and instead intended the will provision to apply only if the IRA passed to his estate as ultimate default taker under the beneficiary designation.
The will itself does not completely eliminate this possibility because it does not expressly state that it is intended to override the presumptive default. Aside from the will, the only evidence supporting decedent’s intent concerning the IRA consists of conflicting affidavits from individuals who expressed certainty about decedent’s intentions. These affidavits invite speculation on the question of decedent’s general intent at various times, but none address the critical question here: whether decedent, when he executed his will, intended the will to supersede the presumptive default provision (Aetna Life Ins. Co. v Sterling, 15 AD2d 334, affd 11 NY2d 959, supra). The affidavit of the will draftsman, opining that decedent intended the IRA to pass under the will, is of negligible value because the draftsman alleges that he did not even know IRAs passed by beneficiary designation and thus did not review or discuss with decedent the IRA documentation. The affidavit of the decedent’s friend regarding decedent’s decision, in 1996, to leave the IRA to Jacqueline is irrelevant on the question of decedent’s intent as it existed at the time of the will’s execution. Jacqueline’s affidavit expressing her understanding of decedent’s motivations underlying his estate planning does not address whether decedent intended the spousal default designation to remain in force when the will was executed.
All of this speculation is neither profitable nor permissible and therefore must be disregarded (Aetna Life Ins. Co. v Sterling, supra). The sole evidence of decedent’s intent, therefore, is the will, and the matter thus may be decided upon the papers.
In the absence of any other evidence, the question becomes whether the presumptive default or the later will provision is more likely to indicate decedent’s intent. The only reasonable view is that the will is a better gauge of decedent’s intent.
Presumptive default beneficiaries are the custodian’s determination of what an average IRA owner who fails to execute a designation is most likely to have wanted whereas a specific disposition of an IRA by will constitutes a clear statement of what a particular decedent wanted. If the designation had been made on the IRA form rather than in the will, the subsequent marriage would not create any rights in the surviving spouse. To hold that such rights arise because the *375 decedent’s disposition of the IRA was not stated on the proper form unnecessarily elevates form over substance.
Furthermore, affirmatively designated beneficiaries in the IRA form do not prevail against beneficiaries named in a will specifically bequeathing the IRA or insurance policy because of the theoretical possibility that the will beneficiaries were intended to take only if the asset passed by default to the estate (i.e., the affirmatively designated beneficiary predeceased). Requiring evidence of a specific intent to override a default designation beyond the testamentary disposition would thus elevate the status of default beneficiaries over that of beneficiaries affirmatively named by decedent. Common sense suggests that such a rule would hinder rather than assist in ascertaining decedent’s true intent.
Based upon the foregoing, the IRA is distributable to the estate.

. Section 8.4 of the custodial account states:
“The Individual Participant may designate, on forms provided by the Custodian, a beneficiary or beneficiaries and successor beneficiaries (‘Beneficiary’ or ‘Beneficiaries’), who may include any individual(s), the trustee(s) of any trust established by him/her, or his/her estate, to receive the balance in the Individual Participant’s Custodial Account in the event of his/her death. The Individual Participant may designate on such form the manner of distribution; provided, however, that the Individual Participant may empower the Beneficiary to designate the manner of distribution. Notwithstanding the foregoing, if all such designated Beneficiaries have predeceased the Individual Participant or if at the time of the death of the Individual Participant there is no designation of Beneficiary then in effect, the Individual Participant’s Beneficiary shall be deemed to be the surviving spouse of the Individual Participant or, if none, the Individual Participant’s estate.
“The manner of distribution shall be subject to applicable transfer requirements and to the provisions of this article. The Individual Participant may from time to time amend or revoke any designation of Beneficiary or manner of distribution by written notice to the Custodian, on forms provided by the Custodian.”

. The IRA account number is not one of those enumerated in this bequest in the will. There is an account number that is identical to that of the IRA *372 except for one digit which the executor alleges, and Jacqueline does not dispute, was intended to refer to the IRA.

. The waiver, of course, applies only to the procedural formalities and does not extend, as the estate argues, to the substantive provision identifying the surviving spouse as beneficiary in the absence of a designated beneficiary.